813 F.2d 53
 7 Fed.R.Serv.3d 111
 NORTHEAST WOMEN'S CENTER, INC., Appellant,
v.
Michael McMONAGLE, Joseph P. Wall, Roland Murkum, Howard
Walton, Henry Tenaglio, Stephanie Morello, Annemarie Breen,
Ellen Jones, Kathy Long, Susan Silcox, Paul C. Armes, Walter
G. Geis, John J. O'Brien, James Codichini, Patricia Walton,
John Breen, Diane Sadler, Joan Andrews, Miriam Dwyer, Mary
Bryne, John Murray, Linda Corbett, Thomas McIlhenny,
Patricia Ludwig, Gerrald Lynch, Margaret Caponi, Deborah
Baker, Thomas Herilhy, Pasquale Varallo, John Stanton, Anne
Knorr, John Conner, Elliott Stevens, Harry Hand, Laurie
Wirfell, Helen Gaytos, Robert Moran, Earl Essex, Patricia
McNamara, Donna Andracavage, Juan Guerra, Linda Hearn.
 No. 86-1364.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 20, 1987.
Decided March 11, 1987.
 
 Edmund A. Tiryak (argued), Julie Shapiro, Maguigan, Shapiro, Engle & Tiryak, Philadelphia, Pa., for appellant.
 Charles A. Volz, Jr. (argued), Philadelphia, Pa., Theresa Mallon Connolly, Jenkintown, Pa., for appellees.
 Before SEITZ, BECKER and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 PER CURIAM.
 
 
 1
 Plaintiff Northeast Women's Center, Inc. ("NEWC" or "Center") appeals the district court order of June 12, 1986 denying its motion for preliminary injunctive relief. We have jurisdiction under 28 U.S.C. Sec. 1292(a)(1) (1982).
 
 I.
 
 2
 NEWC is a Pennsylvania corporation providing pregnancy testing, routine gynecological care, abortions, counseling and community education in Northeast Philadelphia. Defendants are certain individuals who have allegedly protested actively against abortion outside and inside the Center.
 
 
 3
 NEWC commenced this action on August 20, 1985. Its complaint included claims under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Sec. 1961 et seq. (1982), the Sherman and Clayton Acts, 15 U.S.C. Secs. 1, 15 (1982), and state law. The complaint alleged that defendants had conspired and acted to disrupt plaintiff's business by harassing and intimidating its patients and employees with the intention of destroying NEWC's business and property.
 
 
 4
 On May 27, 1986, NEWC moved for a temporary restraining order or a preliminary injunction limiting defendants' protest activities at the Center. NEWC claimed that defendants had recently intensified their harassment of patients and staff, that defendants were acting to prevent NEWC from relocating to its new address, and that defendants had forcibly entered the Center and protested inside for the second time since the complaint was filed.
 
 
 5
 The district court held a hearing, heard testimony and viewed video tapes of the protests. Plaintiff's motion for preliminary injunctive relief was denied on June 12, 1986. The court determined that NEWC had failed to demonstrate irreparable harm as a consequence of defendants' activities. The court also noted that NEWC's probability of success on the merits of its claims was not strong and that the Center had had difficulty identifying individual defendants as participants in the allegedly disruptive activities. Finally, the court expressed concern that much of defendant's conduct enjoyed some protection under the first amendment. This appeal followed.
 
 II.
 
 6
 We may reverse a district court order granting or denying preliminary injunctive relief only when there has been an abuse of discretion, an error of law, or a clear mistake in consideration of the evidence. Oburn v. Shapp, 521 F.2d 142, 147 (3d Cir.1975).
 
 
 7
 The standards for granting a preliminary injunction are familiar. The moving party must show a reasonable probability of eventual success on the merits of its claim and that it will be irreparably injured pending litigation if relief is not granted. See id. In addition, the district court must consider the public interest and the possibility of harm to other interested persons from the grant or denial of injunctive relief. See id.
 
 
 8
 Although the district court mentioned other issues, it denied NEWC's motion solely because it determined that the Center had not demonstrated that it would be irreparably harmed before final resolution of the case. It is evident that the facts are generally very important to the resolution of such an issue. Yet the district court made no factual finding thereon in its opinion or its order. At best, it summarized some of the testimony but did not evaluate it.
 
 
 9
 The failure of the district court to make factual findings is contrary to the mandate of F.R.Civ.P. 52(a) which requires, inter alia, that in granting or refusing interlocutory injunctions, the court "shall similarly set forth the findings of fact and conclusions of law which constitute the grounds for its action." And this omission is not harmless, particularly in this type of case. The factual findings required by F.R.Civ.P. 52(a) are necessary to enable us to discharge our appellate function under the required clearly erroneous standard.
 
 
 10
 We must therefore vacate the order of the district court denying a preliminary injunction so that the district court may comply with F.R.Civ.P. 52(a).
 
 
 11
 We feel compelled to address an important factor in this case. This action was commenced on August 1, 1985 and has not yet reached the final hearing stage. Indeed, because of the deficiency in compliance with Rule 52(a), the parties have not even obtained appellate review of the June 12, 1986 order denying preliminary relief. These considerations form the basis for our suggestion, made in the strongest possible terms, that instead of seeking the court's compliance with our mandate, the parties agree to convert the action into a final injunction hearing. See F.R.Civ.P. 65(a)(2).
 
 
 12
 If the parties so agree, then the final hearing and the determination thereof can be completed on a priority basis. By promptly resolving the injunction request at a final hearing, the district court can bypass the difficult factual issue of whether NEWC will suffer irreparable harm pending final adjudication. The availability of injunctive relief will then depend on NEWC's success on the merits of its claims. See CIBA-GEIGY Corp. v. Bolar Pharmaceutical Co., 747 F.2d 844, 850 (3d Cir.1984). Moreover, the district court can segregate and decide the controlling legal principles and find the facts applicable to conduct within the Center and to activity outside.
 
 
 13
 The order denying a preliminary injunction will be vacated and the matter remanded for appropriate future proceedings.
 
 
 14
 The mandate shall issue forthwith and no costs will be assessed.